# EXHIBIT 7

12299

## SETTLEMENT AGREEMENT AND MUTUAL RELEASE

THIS SETTLEMENT AGREEMENT AND MUTUAL RELEASE (the "Agreement") is entered into as of the 18th day of June, 2008, by and between Greg Cox ("Cox") on the one hand and Need to Know News, LLC ("NTKN") JED Capital, LLC ("JED") and Sarastro Capital, LLC ("Sarastro") on the other hand (collectively, the "Parties" and, individually, a "Party").

WHEREAS, the Parties had various disputes arising out of Cox's employment with NTKN, under an Employment Agreement, dated January 1, 2006 (the "Employment Agreement") and his membership interest in Sarastro, as set forth in Sarastro's Operating Agreement;

WHEREAS, the Parties' disputes are the subject of lawsuit entitled *JED Capital, LLC v. Greg Cox*, Case No. 07 CH 23438, pending in the Circuit Court of Cook County, Illinois (the "Lawsuit");

WHEREAS, each of the Parties desires to resolve all disputes between them including those disputes brought in the Lawsuit; and

WHEREAS, each of the Parties desires to release, remise and acquit any claim or potential claim against each other;

NOW, THEREFORE, for good and valuable consideration, including the representations, warranties, promises, undertakings and agreements set forth below, the receipt and sufficiency of which are hereby acknowledged and agreed to by the Parties hereto, the Parties agree as follows:

1.    Payment.    On or before July 2, 2008, JED shall pay Cox the total sum of $15,000.00, made payable to Greg Cox and Meckler Bulger & Tilson LLP.

1

2.    <u>Cox's Membership Interest in Sarastro</u>.  Cox agrees that upon payment of the amount described in paragraph 1, JED shall have purchased all of Cox's 5% membership interest in Sarastro and that the payment amount shall constitute good and valuable consideration, in accordance with Article 15 of the Operating Agreement.  Upon payment of the amount described in paragraph 1, Cox further agrees he has received all consideration payable to him in connection with his employment with NTKN and the purchase of his membership interest in Sarastro and that he no longer has any direct or indirect interest whatsoever in JED, Sarastro, or any of its related entities, including NTKN.

3.    <u>Dismissal of the Lawsuit</u>.  Upon execution of this Agreement and the payment of the amount described in paragraph 1 above, the Parties agree to dismiss the claims asserted against each other in the Lawsuit with prejudice by executing and submitting the attached Stipulation of Dismissal to Circuit Court of Cook County, Illinois.

4.    <u>Cox's Release of Claims.</u>  Cox for himself and on behalf of his respective heirs, executors, administrators, successors, representatives, assigns, agents, and attorneys ("Cox Releasors") hereby fully and forever releases JED, Sarastro, NTKN, their predecessors, successors, affiliates, shareholders, members, officers, directors, employees, agents, and assigns (the "JED Releasees") from any and all claims, liabilities, demands, sums of money, agreements, promises, damages, costs or expenses (including attorneys' fees), duties, obligations or causes of action of any kind whatsoever relating to any matters of any kind, whether presently known or unknown, suspected or unsuspected, that Cox Releasors had, have or may have against or with respect to the JED Releasees that have occurred up until and including the date of this Agreement, including without limitation, all claims that were or could have been asserted in the Lawsuit, all claims that were or could have been asserted under the Employment Agreement or

2

Operating Agreement, and any and all other claims relating in any way to Cox's employment with NTKN or his membership interest in Sarastro. The Parties agree that, with the exception of any obligations expressly set forth in this Agreement, the release set forth in this paragraph is and will remain a complete general release as to the matters released.

5.  **JED's, NTKN's and Sarastro's Release of Claims.** JED, NTKN, and Sarastro, for themselves and on behalf of their respective heirs, executors, administrators, successors, representatives and assigns and each and everyone of their parent, subsidiary and affiliated companies, and their directors, members (including John Harada), officers, employees, insurers, administrators, agents, attorneys, predecessors, successors and assigns (collectively, the "JED Releasors"), hereby fully and forever release Cox and his heirs, executors, administrators, attorneys, successors and assigns ("Cox Releasees") from any and all claims, liabilities, demands, sums of money, agreements, promises, damages, costs or expenses (including attorneys' fees), duties, obligations or causes of action of any kind whatsoever relating to any matters of any kind, whether presently known or unknown, suspected or unsuspected, that the JED Releasors had, have or may have against or with respect to the Cox Releasees that have occurred up until and including the date of this Agreement, including without limitation, all claims that were or could have been asserted in the Lawsuit, all claims that were or could have been asserted under the Operating Agreement (including the Promissory Note, dated January 6, 2005 entered into between Cox and JED), the Employment Agreement, and any and all other claims relating in any way to Cox's employment with NTKN or his membership interest in Sarastro. The Parties agree that, with the exception of any obligations expressly set forth in this Agreement, the release set forth in this paragraph is and will remain a complete general release as to the matters released.

3

6.    **No Pending or Future Lawsuits.** Cox and JED, NTKN, and Sarastro, and any and all of its members, represent that except for the Lawsuit, each of them has no lawsuits, claims or actions in his or their, or on behalf of any other person, member, or entity, pending or threatened against the other, and that neither of them shall bring any claims on their own behalf or on behalf of any other person or entity against the other with respect to any and all matters released by them in paragraphs 4 and 5 herein.

7.    **Neutral Employment Reference.** NTKN and JED agree that that any inquiry regarding Cox from a prospective employer shall be directed to a senior human resources employee at NTKN who will respond to such inquiry in a neutral fashion, disclosing only Cox's dates of employment, positions held, and the salary at which he was last compensated. NTKN will inform any prospective employer that NTKN does not disclose any other information about former employees.

8.    **No Admission.** It is agreed and understood that:

(a)    this Agreement is not to be considered an admission of any improper acts, conduct or liability on the part of the Parties or any of their agents;

(b)    that any such acts, conduct or liability are expressly denied; and

(c)    this Agreement is made to avoid the expenditure of large sums of money and substantial amounts of time, energy and efforts on the part of the Parties and their attorneys which would have been necessitated by continuing the dispute between the Parties.

9.    **Assignment.** The Parties represent and warrant that there has been no assignment, negotiation, transfer or alienation of any causes of action, or any other rights, obligations, liabilities, demands or claims existing between the Parties or which could be asserted by the Parties.

10.    Representation.  In connection with the negotiating, drafting and execution of this Agreement, the Parties each acknowledge that they have been represented by their own, separate and independent legal counsel.

11.    Binding Agreement.  The Parties to this Agreement warrant that they have read this Agreement, that they intend to be legally bound by the same, that they have entered into this Agreement freely and voluntarily and that they have the full right, power, authority and capacity to enter into and execute the same.  The Parties hereto further warrant that this Agreement is entered into with no Party relying upon any statement or representation made by any other person or entity not embodied in this Agreement.

12.    Confidentiality and Nondisclosure.  The Parties agree to restrict disclosure of the terms of this Agreement solely to their attorneys, accountants and tax and financial advisors with a need to know, all of whom shall be instructed similarly to hold the existence and terms of this Agreement in the strictest of confidence, and not to disclose the terms of this Agreement to others except as required by law.

13.    Collaborative Drafting.  This Agreement represents the collaborative drafting of the Parties and their respective attorneys.  Accordingly, no provisions of this Agreement shall be deemed to have been drafted by any one Party or that Party's attorney.  Likewise, any uncertainty or ambiguity shall not be construed for or against any Party as an attribution of drafting by any Party.

14.    Integration Clause.  This Agreement is complete and reflects all of the agreements, representations, warranties, undertakings and promises between the Parties and supersedes and controls over all prior agreements, understandings and discussions whatsoever between and among the Parties.

15.    Governing Law.  This Agreement shall be governed and construed in accordance with Illinois law without regard to its choice of law provisions.

16.    Counterparts.  This Agreement may be executed in separate counterparts and shall become effective upon the delivery of original signatures or of signatures transmitted by facsimile.

17.    Waiver.  No waiver of any provision of this Agreement shall operate as a waiver of such provision or any other provision on a future occasion.

18.    Modification.  This Agreement may only be amended or modified by a writing signed by each of the Parties.

19.    Recitals.  The recitals made above are an integral part of this Agreement and are hereby incorporated herein and made a part hereof as though fully set forth herein.

The parties hereby execute this Agreement as of the date set forth above.

Greg Cox

By: _____


Sarastro Capital, LLC

By: _____

Its: Authorized Party


Need to Know News, LLC

By: _____

Its: Authorized Party
for Sarastro Capital, LLC,
its Manager


JED Capital, LLC

By: _____

Its: Manager

6