IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

GREGORIE COX,

       Plaintiff,

  v.

JED CAPITAL, LLC, SARASTRO CAPITAL,
LLC, NEED TO KNOW NEWS, LLC, and
JOHN HARADA,

       Defendants.

No. 13 C 8793

MEMORANDUM OPINION AND ORDER

JAMES F. HOLDERMAN, District Judge:

On December 9, 2013, plaintiff Gregorie Cox ("Cox") filed a seven-count complaint against defendants JED Capital, LLC ("JED"), Sarastro Capital, LLC ("Sarastro"), Need to Know News, LLC ("NTKN"), and John Harada ("Harada") (collectively, "Defendants"), alleging a variety of fraud claims in connection with JED's 2008 purchase of Cox's stock in Sarastro. (Dkt. No. 1.) On March 27, 2014, Cox filed an amended complaint ("Amended Complaint") alleging a similar array of claims. (Dkt. No. 17.) On April 25, 2014, Defendants moved to dismiss Cox's Amended Complaint.[1] (Dkt. No. 21.)

On June 6, 2014, Cox's attorney—who did not file an appearance in this case in violation of Local Rule 83.16—filed a response (Dkt. No. 35 ("Pl.'s Resp.")) to Defendants' motion to dismiss. Cox's response is 15 single-spaced pages long, which is roughly twice the permissible

---

[1] NTKN did not join the motion to dismiss and has not yet filed a responsive pleading. Every count of Cox's Amended Complaint names every defendant, including NTKN, and often fails to assign allegations to a particular party. Accordingly, the court will consider whether the arguments presented in Defendants' motion to dismiss apply to NTKN as well.

length under Local Rules 5.2(c) and 7.1. Three days later, on June 9, Cox's attorney filed a motion seeking leave to file a second amended complaint. (Dkt. No. 36.) In keeping with his pattern of indifference to this court's rules, Cox's attorney simultaneously filed the second amended complaint, without permission from the court and in violation of Federal Rule of Civil Procedure 15(a)(2). (Dkt. No. 37.) As stated in open court on July 8, 2014, because the parties have already completed briefing on Defendants' motion to dismiss Cox's Amended Complaint, the court will first address the merits of Defendants' motion to dismiss. The court will then consider Cox's motion for leave to file a Second Amended Complaint.

The only federal claim alleged in Cox's Amended Complaint is Count V, which charges Defendants with having violated section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and the SEC's Rule 10b-5, 17 C.F.R. § 240.10b-5, by making misrepresentations and omissions in connection with the purchase of Cox's Sarastro stock. (Am. Compl. ¶¶ 53-57.) Cox also brings Illinois state law claims against Defendants for fraud in the inducement (Count I), breach of contract (Counts II and VIII), tortious "infringement" with contract (Count III), violations of the Illinois Limited Liability Company Act, 805 ILCS 180/15-2 (Count IV), fraudulent concealment (Count VII), and "breach of contract of covenant of good faith and fair dealing" (Count IX). (Am. Compl. ¶¶ 35-52, 64-82.) Cox finally seeks to compel Defendants to produce an accounting of NTKN's financial transactions during the "relevant time period," which Cox styles as a "complaint for accounting" (Count VI).[2] (Am. Compl. ¶¶ 58-63.)

For the reasons explained below, Count V must be dismissed because it is untimely, the

---

[2] Cox states that he is entitled to NTKN's financial transactions during the time period covered by Section 15.5 of an operating agreement filed as Exhibit 1 to Cox's original complaint. (Dkt. No. 1-1.) The document filed as Exhibit 1 to Cox's original complaint omits Section 15.5 because Cox's attorney failed to scan and file page 18 of the operating agreement. (*See* Dkt. 1-1 at 17-19.)

court declines to exercise supplemental jurisdiction over Cox's remaining state law claims, and Cox's motion for leave to file a second amended complaint—which contains no additional allegations that would change this court's determination on Count V—is denied.

RELEVANT FACTUAL BACKGROUND

JED is an Illinois limited liability company, (Am. Compl. ¶ 4), "that participates in, among other things, automated trading of futures, equities, and foreign exchange instruments." *Shirley* v. *JED Capital, LLC*, 724 F. Supp. 2d 904, 908 (N.D. Ill. 2010) (Leinenweber, J.). It is a high-frequency trading ("HFT") firm. JED was formerly the controlling shareholder of Sarastro, which was a corporate entity formed to own and manage the third defendant, NTKN. (Am. Compl. ¶¶ 2, 4.) NTKN is a "news" organization but produces no original content; it sells an ultra-fast electronic news feed to HFT firms by leveraging its access to government "lock-up rooms" and embargoed news releases. (Am. Compl. ¶¶ 30.) Trading firms pay NTKN up to $31,000 per month for faster access to the market-moving news, (*id.*), presumably to trade on the information before it reaches slower market participants. Harada is the controlling shareholder of JED. (Am. Compl. ¶ 5.)

Cox was an employee of NTKN from January 1, 2006 until his termination on August 8, 2006. (Am. Compl. ¶¶10, 13.) As part of his employment, Cox received a 5% equity interest in Sarastro, the shell company formed to own NTKN. (*Id.* ¶ 1.) Sarastro's operating agreement granted JED an option to repurchase Cox's shares under a number of circumstances, including (1) if NTKN's monthly cash flow dropped below negative $5,000 or (2) if Cox's employment was terminated for cause. (Dkt. No. 1 Ex. 1 ¶ 15.4(a)-(c).) The operating agreement required JED to pay Cox the book value of Sarastro as of the last day of the current fiscal quarter. (*Id.*)

On November 1, 2006, nearly three months after Cox's termination, JED attempted to

exercise its option to repurchase Cox's shares in Sarastro because NTKN's cash flow was purportedly less than negative $5,000. (Dkt. No. 1 Ex. 3 ¶ 9.) Although JED claimed the book value of NTKN in September 2006 was negative $20,484.48, JED graciously offered Cox $100 for his 5% equity interest. (*Id.* ¶¶ 9, 11.) Cox suspected fraud and refused to sell. On August 21, 2007, JED filed a complaint for declaratory judgment in the Circuit Court of Cook County, Illinois seeking to enforce its repurchase right. (*Id.*)

After conducting discovery, JED and Cox entered into settlement discussions, the purpose of which was to agree on a valuation of Cox's Sarastro shares. (Am. Compl. ¶ 22.) On March 13, 2008, Sarastro produced to Cox and his attorneys its financial statements for the years ended December 31, 2006 and December 31, 2007. (*Id.* ¶ 22.) Sarastro's financial statements reported deferred revenue of $876,158 for 2006 and $815,994 for 2007. (*Id.* ¶ 24.) Cox and his attorneys determined that the deferred revenue in both years supported a "significant" valuation of Cox's 5% equity interest well above JED's $100 offer. (*Id.* ¶ 24.) When Cox communicated his position to JED, however, JED refused to shed light on the deferred revenue. (*Id.*) Instead, on May 28, 2008, Sarastro produced revised financial statements reducing deferred revenue to $178,095 for 2006 and $2,795 for 2007. (*Id.* ¶ 25.)

On June 18, 2008, despite Sarastro's suspicious revision of its financial statements, Cox and JED reached a settlement agreement whereby Cox agreed to sell his 5% interest in Sarastro to JED for $15,000. (*Id.* ¶ 31.) Cox later learned that Harada and JED sold a 10% interest in Sarastro to another JED employee for $200,000 around the same time they negotiated the purchase of Cox's 5% interest for $15,000. (*Id.* ¶ 28.)

On December 9, 2013, more than five years after Cox sold his interest in Sarastro to JED pursuant to the settlement agreement, Cox filed his lawsuit in this court alleging a number of

4

fraud claims in connection with the sale. All of the allegations in Cox's Amended Complaint arise from his assertion, on information and belief, that Harada ordered Sarastro to revise its financial statements downward for the sole purpose of depriving Cox of the fair value of his shares. (*Id.* ¶ 27.) Defendants have moved to dismiss all counts of Cox's Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

## LEGAL STANDARDS

Under the Federal Rules of Civil Procedure, a complaint need contain only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley* v. *Gibson*, 355 U.S. 41, 47 (1957)). Although "detailed factual allegations" are not required, "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555. The complaint must "include sufficient facts 'to state a claim for relief that is plausible on its face.'" *Cole* v. *Milwaukee Area Tech. Coll. Dist.*, 634 F.3d 901, 903 (7th Cir. 2011) (quoting *Justice* v. *Town of Cicero*, 577 F.3d 768, 771 (7th Cir. 2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009). In ruling on a Rule 12(b)(6) motion, the court "construe[s] the . . . [c]omplaint in the light most favorable to Plaintiff, accepting as true all well-pleaded facts and drawing all possible inferences in his favor." *Cole*, 634 F.3d at 903.

Cox's allegations of securities fraud also trigger Rule 9(b). Under Rule 9(b), a plaintiff must plead the "circumstances constituting fraud" with particularity. These circumstances include "the identity of the person who made the misrepresentation, the time, place, and content

5

of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Vicom, Inc.* v. *Harbridge Merch. Servs., Inc.*, 20 F.3d 771, 777 (7th Cir. 1994). In other words, a plaintiff must allege "the who, what, when, where, and how." *Wigod* v. *Wells Fargo Bank, N.A.*, 673 F.3d 547, 569 (7th Cir. 2012) (citations and quotations omitted).

Finally, claims under Section 10(b) are also subject to the Private Securities Litigation Reform Act ("PSLRA"), which further heightens the pleading standard for plaintiffs alleging securities fraud claims. *See Makor Issues & Rights, Ltd.* v. *Tellabs, Inc.*, 437 F.3d 588, 594 (7th Cir. 2006) ("[T]he PSLRA essentially returns the class of cases it covers to a very specific version of fact pleading—one that exceeds even the particularity requirement of Federal Rule of Civil Procedure 9(b)."). Under the PSLRA, a securities fraud complaint must: (1) "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed"; and (2) "state with particularity facts giving rise to a strong inference that the defendant[s] acted with the required state of mind." 15 U.S.C. § 78u-4(b)(1)-(2). Notwithstanding the heightened pleading standard, a court facing a Rule 12(b)(6) motion must still accept all factual allegations in the complaint as true. *Tellabs, Inc.* v. *Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

## ANALYSIS

Because Count V is Cox's only federal claim, the court will address it first. If, as Defendants argue, Count V fails to state a claim under the federal securities laws, there is no federal question jurisdiction and the court determine whether there is another basis for federal jurisdiction.

I.  Cox's Federal Securities Law Claim (Count V)

In Count V, Cox alleges that Defendants violated Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and the SEC's Rule 10b-5, 17 C.F.R. § 240.10b-5, by making misrepresentations and omissions in connection with the purchase of Cox's Sarastro stock. (Am. Compl. ¶¶ 55.) Section 10(b) forbids deceptive conduct "in connection with the purchase or sale of" a security, and Rule 10b-5 prohibits the making of any "untrue statement of a material fact" or omission of any material fact "necessary . . . to make the statements made . . . not misleading." In order to prevail on a 10b–5 claim, a plaintiff must establish that defendants: (1) made a misstatement or omission, (2) of material fact, (3) with scienter, (4) in connection with the purchase or sale of securities, (5) upon which the plaintiff relied, and (6) that reliance proximately caused the plaintiff's injuries. *Stoneridge Investment Partners, LLC* v. *Scientific–Atlanta, Inc.*, 552 U.S. 148, 155 (2008) (citing *Dura Pharmaceuticals, Inc.* v. *Broudo*, 544 U.S. 336, 341–42 (2005)); *Pugh* v. *Tribune Co.*, 521 F.3d 686, 693 (7th Cir. 2008).

A claim for securities fraud must also be timely. An argument based on timeliness is an affirmative defense that need not be anticipated in the complaint to survive a motion to dismiss. *United States* v. *Lewis*, 411 F.3d 838, 842 (7th Cir. 2005). A plaintiff may, however, "plead [himself] out of court by pleading facts that establish an impenetrable defense to [his] claims." *Tamayo* v. *Blagojevich*, 526 F.3d 1074, 1086 (7th Cir. 2008). If "the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense" the court may dismiss an untimely claim pursuant to Rule 12(b)(6). *Lewis*, 411 F.3d at 842; *see also Brooks* v. *Ross*, 578 F.3d 574, 579 (7th Cir. 2009) (granting motion to dismiss based on statute of limitations defense where the relevant dates were set forth unambiguously in the complaint). "Unless the complaint alleges facts that create an ironclad defense," however, "a limitations argument must await

7

factual development" through discovery. *Foss* v. *Bear, Stearns & Co.*, 394 F.3d 540, 542 (7th Cir. 2005).

Defendants assert that federal law imposes a three-year statute of repose on 10b-5 claims pursuant to 15 U.S.C. § 77m. (Dkt. No. 22 ("Defs.' Mem.") at 12.) Defendants are incorrect, but that does not necessarily save Cox's claim. 10b-5 claims are governed by 28 U.S.C. § 1658(b), which states that claims must be brought "not later than the earlier of—(1) 2 years after the discovery of the facts constituting the violation; or (2) 5 years after such violation." 28 U.S.C. § 1658(b)(1)-(2). The Seventh Circuit has held that subsection (2)—and probably subsection (1)—should be interpreted as a statute of repose, which means that the five-year clock runs from the date of the fraud, not the date of the injury. *McCann* v. *Hy-Vee*, 663 F.3d 926, 932 (7th Cir. 2011). In other words, the "violation" in subsection (2) is fully formed at the time of the alleged misrepresentation or omission, regardless of when the misrepresentation or omission actually affects the price of any purchase or sale of a security. *Id.* at 930-32. Furthermore, because subsection (2) is a statute of repose, equitable estoppel and equitable tolling—two doctrines courts may use to extend a statute of limitations—are unavailable. *Id.* at 930 (citing *Cada* v. *Baxter Healthcare Corp.*, 920 F.2d 446, 451 (7th Cir. 1990)). A statute of repose "serves as an unyielding and absolute barrier to a cause of action." *Id.* at 930 (quoting *Klein* v. *DePuy, Inc.*, 506 F.3d 553, 557 (7th Cir. 2007)).

Here, Cox's Amended Complaint states two potential 10b-5 violations, both of which are time-barred under section 1658(b)(2). First, Cox alleges Defendants produced false and deceptive financial statements to induce Cox to sell his interest in Sarastro for less than its true value. (Am. Compl. ¶¶ 55.) This alleged violation occurred, at the latest, on May 28, 2008, when Defendants produced the revised financial statements that mysteriously reduced Sarastro's

deferred income by 80% in 2006 and 99% in 2007. Second, Cox alleges Defendants failed to disclose their sale of a 10% interest in Sarastro at the same time they were negotiating to buy Cox's 5% stake for a much lower price. (*Id.*) Cox's Amended Complaint does provide the date of the sale to a third party. The court must view the facts in the light most favorable to Cox, so the court will use June 18, 2008, the date Cox sold his shares to JED, which is the last date where a third-party transaction could have affected his decision to sell. Based on the facts alleged in Cox's Amended Complaint, the two 10b-5 violations in this case occurred on May 28, 2008 and June 18, 2008, more than five years before Cox filed his lawsuit on December 9, 2013. The suit is therefore untimely under section 1658(b)(2).

Cox attempts to overcome the timeliness issue by arguing, incorrectly, that a plaintiff may bring a securities fraud claim within five years after the violation or two years after he discovers the facts constituting the violation. (Pl.'s Resp. at 9.) In other words, Cox reads the phrase "not later than the earlier of" out of section 1658(b). Cox further argues that Defendants' fraudulent concealment of the facts should toll the statute of limitations until Cox finally discovered the violations in 2013. (Pl.'s Resp. at 14.) As discussed above, however, section 1658(b)(2) is a statute of repose that cannot be tolled. It is true that the two-year time limit in section 1658(b)(1) does not begin to run until Cox would have discovered the violations had he been diligent.[3] *Merck & Co.* v. *Reynolds*, 559 U.S. 633, 650 (2011). But section 1658(b)(1), by the express language of the statute, cannot extend the time for bringing a claim beyond the "unyielding and absolute" five-year barrier imposed by section 1658(b)(2). *McCann*, 663 F.3d at 930 (citations and quotations omitted); 28 U.S.C. § 1658(b)(1)-(2). Consequently, because Cox

---

[3] Although the court need not address whether Cox should have discovered the fraud before 2013, Sarastro's unexplained and favorable revision to its financial statements in response to Cox's settlement demand should have raised a red flag in 2008.

failed to file suit within five years of the occurrence of the 10b-5 violations alleged in his Amended Complaint, Count V is untimely and must be dismissed against all Defendants, including NTKN.

II.  Cox's Remaining State Law Claims

Although Cox's Amended Complaint acknowledges that Count V is the sole basis for federal jurisdiction, Cox cites 28 U.S.C. § 1332. (Am. Compl. ¶ 6.) Section 1332 is the statute governing diversity jurisdiction and, for the avoidance of doubt, the court will determine whether it has diversity jurisdiction. It does not. Plaintiff Cox is an Illinois citizen, defendant Harada is an Illinois citizen, and NTKN and JED are both Illinois limited liability companies. (Am. Compl. ¶¶ 21, 3-5.) Sarastro is a Delaware corporation, but the diversity statute requires complete diversity, meaning "none of the parties on either side of the litigation may be a citizen of a state of which a party on the other side is a citizen. *Howell by Goerdt* v. *Tribune Entertainment Co.*, 106 F.3d 215, 217 (7th Cir. 1997). All but one of the parties is an Illinois citizen and none of the parties allege otherwise. Accordingly, the court lacks diversity jurisdiction over the matter and must determine whether to continue to exercise supplemental jurisdiction over Cox's remaining state law claims.

Under 28 U.S.C. § 1367(c), a district court may decline to exercise supplemental jurisdiction over supplemental state law claims if "the district court has dismissed all claims over which it has original jurisdiction." "[T]he general rule is that, when all federal-law claims are dismissed before trial, the pendent claims should be left to the state courts." *Wright* v. *Associated Ins. Cos.*, 29 F.3d 1244, 1251-52 (7th Cir. 1994). Cox's lawsuit remains in the early pre-trial stage and raises a number of state law issues best addressed by Illinois courts. Consequently, as a

matter of discretion, the court declines to exercise supplemental jurisdiction over Cox's remaining state law claims.

III. Cox's Second Amended Complaint

On June 9, 2014, three days after Cox filed a response to Defendants' motion to dismiss, Cox filed a motion for leave to file a second amended complaint. Cox's second amended complaint (Dkt. No. 37) adds two state law claims (Counts VIII and IX) and one additional allegation concerning Cox's discovery of Defendants' alleged fraud. Specifically, Cox claims that he "did not know and had no reason or ability to know of the material misrepresentations made to him by Defendants nor did [he] know or have any reason or ability to know that Defendants had failed to provide him with information material to the value of NTKN and Sarastro." (Dkt. No. 37 ¶ 35A.)

As discussed earlier, the timing of Cox's discovery of Defendants' alleged fraud is irrelevant to the court's determination. Defendants' alleged misrepresentations and omissions occurred outside the five-year statute of repose and are time-barred regardless of when Cox discovered them, at least under federal law. 28 U.S.C. § 1658(b)(2). Because the additional allegations set forth in Cox's second amended complaint would not change the court's decision to dismiss Count V, and because the court declines to exercise supplemental jurisdiction over Cox's remaining state law claims, Cox's motion for leave to file a second amended complaint must be denied as well.

CONCLUSION

For the reasons explained above, Defendants' "Motion to Dismiss" [21] is granted as to Count V because Count V is untimely. Count V is also dismissed against NTKN. Because the court has dismissed all claims over which it has original jurisdiction, the court declines to

exercise supplemental jurisdiction over the remaining state law claims in Counts I, II, III, IV, VI, and VII. Counts I, II, III, IV, VI, and VII are dismissed without prejudice to Cox's right to refile his claims in state court. Cox's motion for leave to file a second amended complaint [36] is denied because the second amended complaint contains no additional allegations that would change the court's determination on Count V, the sole basis for federal jurisdiction. Civil case terminated.

ENTER:

*James F. Holderman*
JAMES F. HOLDERMAN
District Judge, United States District Court

Date: July 11, 2014